No. 41,063

Roy Avery and Lulu Avery, *Appellees*, v. The City of Lyons, Kansas, a Municipal Corporation, *Appellant*.

(331 P. 2d 906)

Opinion filed November 8, 1958.

*Edward Wahl,* of Lyons, argued the cause, and *Bronce Jackson,* also of Lyons, was with him on the briefs for appellant.

*Frederick Woleslagel,* of Lyons, argued the cause, and *L. E. Quinlan,* also of Lyons, was with him on the briefs for appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is the second appearance of this action for appellate review. In the first appeal the judgment of the trial court upon the verdict in the sum of $36,127.59 was reversed and the case remanded for a new trial as a result of erroneous rulings. (*Avery v. City of Lyons,* 181 Kan. 670, 314 P. 2d 307.) In the second trial the jury returned a verdict in the sum of $28,432.32 upon which the trial court entered judgment. Appeal has been duly perfected from all adverse rulings and the appellant specifies trial errors.

The explosion and fire of the Avery building in the City of Lyons gave rise to a number of claims against the City. Various of the other claimants appeared before this court in *Wilson v. Wahl,* 182 Kan. 532, 322 P. 2d 804, wherein the right of Edward Wahl to represent the City of Lyons as an attorney was challenged. Appellees herein did not join with the parties in that action nor do they here assert the question raised in that appeal.

The second trial insofar as the record discloses was conducted in accordance with the decision and opinion of this court on appeal from the first trial. The evidence insofar as the facts are concerned is substantially identical with the evidence presented at the first trial, a summary of which is stated in the former opinion. Reference is therefore made to *Avery v. City of Lyons,* 181 Kan. 670, 314 P. 2d 307, for a statement of facts upon which further discussion of this case will proceed. Any significant variations or modifications concerning the evidence will be dealt with in this opinion upon consideration of the questions presented by the appellant in its brief.

It is specified that the trial court erred in its order overruling the appellant's demurrer to the plaintiffs' evidence (*a*) by reason of plaintiffs' failure of proof, and (*b*) by reason of plaintiffs' contributory negligence. On reviewing the record in the first appeal to this court it was said:

". . . We are of the opinion the evidence was sufficient to withstand the demurrer and the trial court did not err in its ruling. (*Hashman v. Gas Co.,* 83 Kan. 328, 111 Pac. 468; *Richards v. Kansas Electric Power Co.,* 126 Kan. 521, 524, 525, 268 Pac. 847; *Jelf v. Cottonwood Falls Gas Co.,* 160 Kan. 112, 160 P. 2d 270.)" (p. 672.)

The evidence, as viewed on demurrer, supplemental to that disclosed in the statement of facts of the former opinion, disclosed that there were three gas mains in the alley behind the Avery store. One of these mains, used by the Consolidated Gas Company, had been cut off more than seven weeks prior to the explosion. The other two gas mains, each eight inches in diameter, were city mains. One was a low presure line with eight ounces of pressure from which consumers were served and the other a high pressure main carrying approximately 12 to 15 pounds of pressure that fed the consumer line.

Upon excavation of the City's mains in the area back of the Avery store a number of leaks were disclosed. The largest hole was 3/8ths of an inch in diameter located in the high pressure line in Main Street which was about 30 feet southeast of the closest corner of the Avery building. There was testimony from an expert that a hole of this size in the high pressure line of from 10 to 30 pounds would permit the escape of at least 500 cubic feet of gas in one hour. The morning after the explosion and fire gas was escaping from a sewer manhole in very close proximity to the large leak. The sewer line in which the manhole was located ran north and south in the alley back of the Avery store and across Main Street at the alley. There were also four or five leaks right back of the Avery store varying in from the size of "lead in a lead pencil to the size of a lead pencil." The evidence was not clear whether these were in the high presure line. The leak farthest north in the lines which were excavated was 1/8th of an inch in diameter and said to be in the high pressure line about 20 feet from the northeast corner of the Avery store.

From the alley leading under the back of the Avery building were three separate lines along which gas could follow—the gas service line to the store, the sewer line which serviced the Avery store and a stub sewer line which was not being used. From the 1st day of January, 1954, through the 25th day of April, 1954, the date of the explosion and fire, rainfall in the City of Lyons was only 1.20 inches, the most at one reading was over one-half inch on February 20th. The evidence disclosed a dry condition of the soil would cause voids to open through which gas could travel; that the alley was paved except for 18 to 24 inches from the back of the Avery building; that the 65-year-old foundation would per-

mit gas to go through where the mortar was used; and that .customarily gas would enter through a wall where lines went through, if gas was escaping in the immediate vicinity.

The evidence concerning knowledge on the part of the City that gas was escaping back of the Avery building was strengthened in the second trial. A line formerly used by the Consolidated Gas Company .which was adjacent to the city main in the alley back of the Avery building was cut off on March 1, 1954, by C. F. Oline, its district manager. He told Hugh Ramage, the superintendent of utilities of the City of Lyons, that the Consolidated Gas Company's line had been cut off and "that there was a leak back of the Avery store." Oline further testified that they intended to dig up .the line back of the Avery store and repair it as soon as they had finished the one they were working on, but that "Due to the fact that we killed that line, there was no reason for us to do it, so I notified him [Ramage] of the fact, and told him that it was his from now on." The inference is that if there was still a gas leak back of the Avery store after March 1, 1954, the gas was escaping from the City's main. At the scene of the fire on April 25, 1954, a fireman had a conversation with Ramage in which Ramage said: "We were going to have to replace some of the lines, but we hoped it wouldn't be this year."

Further evidence of leaks in the city line in this vicinity was disclosed by Ramage in his testimony. In the forepart of February, 1954, the City did some work one block south of the Avery area to ascertain the location of a gas leak in the Safeway Store. Testimony disclosed that the City's lines were installed new in 1935 but that they had become scaled and pitted.

Various tenants in the Avery store and also Mr. Avery had called the City on numerous occasions concerning the odor of gas in the back part of the Avery building. Ramage testified that on March 4, 1954, the beauty shop operator called the city office about a stink or smell in the beauty shop at the rear of the Avery store. Garrison Yoder, the assistant to Ramage, responded but detected no odor. Both Ramage and Yoder returned to the beauty shop the next morning, March 5, 1954. Upon inspection Ramage informed Roy Avery that a sewer odor was present which emanated from the lavatory and hot water tank area, and requested that Mr. Avery get a plumber. He further suggested that the floor be removed to make an investigation to be sure what was causing this odor.

Roy Avery testified that the first time the city men came to the store was about March 20, 1954, to check for leaking gas. Roy Avery stated "It might be a sewer gas smell, but to me it smelled like natural gas." Avery testified that after these city employees checked the area for gas leaks they informed him that it was not natural gas and advised him to get a plumber to remedy the defect since it was a sewer gas smell. Pursuant thereto a plumber was called who made repairs the first week in April, 1954, to lavatory and trap in a sink in the beauty shop at the back of the Avery store. Mr. Avery was informed after the repairs that the odor was helped but shortly thereafter the beauty operator again informed him that the odor was present. He again called the plumber but the explosion and fire happened before any additional work was done.

The evidence disclosed that the City of Lyons did not even own a gas explosion meter and at no time was an investigation conducted by employees of the City of Lyons to determine the presence of leaking gas with an explosion meter prior to the explosion and fire in question.

Two eye witnesses on the early morning of April 24, 1954, saw a flash of lightning strike at the rear of the Avery store following which the explosion and fire occurred. There was testimony that lightning in and of itself would not cause an explosion within the store but that the explosion would have to be caused by the presence of gas in explosive quantities which could be ignited by lightning. Numerous other facts are disclosed by the record which fill in the details.

This evidence in our opinion was sufficient to overcome a demurrer and present a question of fact for the jury to determine whether the appellees had sustained the burden of proof by showing: (1) The cause of the injury to be escaping gas; (2) that such gas belonged to the defendant company; (3) that it escaped through the negligence of the company; (4) that it accumulated in the place where the injury occurred; and (5) that defendant negligently and proximately caused the damage. (38 C. J. S., Gas, § 47, pp. 743, 745.)

Appellant makes much of the point that the plaintiffs have admitted contributory negligence. It is called to our attention that the Averys each personally signed the petition in this action which,

among other matters, contained the following statement of admission of knowledge, thus:

"Plaintiffs understand and therefore allege that for several years prior to 1954, the exact number being unknown to plaintiffs, the defendant was contacted on the average of approximately once a year by the plaintiffs' tenants because of the suspected presence of natural gas in the building."

At the trial Roy Avery acknowledged signing the petition and that the statement made therein was correct. Appellant also calls attention to the fact that various. tenants testified of telling Mr. Avery of the odor which they suspected to be natural gas.

All of the facts which this testimony established, namely knowledge on the part of Roy Avery that gas was possibly escaping and that its presence was detected in the rear part of the store, *culminated* in Avery's attempt to remedy the situation. But he was advised by city employees in charge of utilities that it was not natural gas which was escaping or natural gas odors. Roy Avery testified:

". . . When Hugh Ramage and Garrison Yoder who had been with the utility department a goodly number of years told me it wasn't natural gas, I believed they would be able to identify it. When he (Hugh Ramage) answered me it wasn't natural gas, I believed him. No one, at any time ever told me that the source of this smell was anything that would be dangerous to life or property."

The jury was within its prerogative to give this testimony full credence. On this state of the record the numerous authorities cited by appellant, among which are *Green v. Higbee,* 176 Kan. 596, 272 P. 2d 1084; and *Cooper v. Sorenson,* 182 Kan. 560, 322 P. 2d 748, have no application.

Upon all the evidence disclosed by the record, whether or not appellees were guilty of contributory negligence was a question of fact to be determined by the jury. The evidence in the record did not establish contributory negligence through appellees' admissions as a matter of law and the trial court did not err in overruling the demurrer to the evidence. (See, *Townsend, Administrator v. Jones,* 183 Kan. 543, 331 P. 2d 890, and cases cited therein.)

Appellant makes much of the point that the jury was asked the following question: "Do you find that the plaintiffs had a hot water heater with pilot light burning, in operation in their store, at the time of the fire and for a period of time prior thereto?" to which the jury answered: "Don't know." On this point counsel for appellees admitted at the trial of the case that the answer to that

would be "yes" because that was plaintiffs' (appellees') proof. It is argued that the jury was more anxious to answer the special findings in such a way as might not interfere with the general verdict than to give full, fair and truthful answers to the particular questions of fact submitted. (Citing *A. T. & S. F. Rld. Co. v. Brown, Adm'r*, 33 Kan. 757, 7 Pac. 571.)

Actually this point has little merit. If Roy Avery was not aware that the odors were caused by escaping gas and believed the City's employees when they told him it was sewer gas, there would be no reason for him to turn the gas heater off and his failure to do so would not be negligence. On the other hand mere testimony that a gas heater was working and in order with the pilot light burning on the evening before the explosion in question would not of necessity prove that the pilot light was burning at the time of the explosion and fire. The jury, therefore, may have felt that it was fully justified in answering the question "Don't know." Had the appellant felt this answer too vague and indefinite it should have requested the court to instruct the jury to give a more specific answer, since the burden of proving contributory negligence was upon the appellant. (*Priest v. Life Insurance Co.*, 116 Kan. 421, 227 Pac. 538; and *Moore v. Connelly*, 119 Kan. 35, 237 Pac. 900.) An inspection after the fire disclosed that none of the gas appliances was defective—they would not leak unburned gas. There was testimony that the gas hot water heater was vented and, if unburned gas came from this source, it would escape through the vent.

It is specified that the trial court erred in admitting evidence to explain the assessed valuation of the property which was destroyed by fire. Pursuant to the decision of this court as a result of appeal from the first trial, the trial court on the second trial admitted in evidence values placed on personal property assessment sheets by the assessor which were given by Roy Avery one month prior to the fire. These assessment values showed $2,000 for fixtures and stock and merchandise at $6,000. The trial court admitted appellees' evidence to the effect that this property was taken in at only 30% of its actual value upon instructions from the county assessor. Appellant objected on the ground that it was contrary to the statutory requirements of Kansas. This question was answered in the former opinion in the following language:

". . . Their introduction in evidence would not have been conclusive on plaintiffs on the question of values—they were of course subject to explanation

as to the 'rate' at which the property was listed, any changes or additions in the fixtures and stock in the meantime, or as to any other matter affecting the value." (p. 673.)

Justice would prove to be a mockery if evidence of the assessed value of property for taxation purposes in the State of Kansas were held to be conclusive evidence of the true value of such property, when as a matter of fact and in practice the State Commission of Revenue and Taxation, which has supervisory power over county assessors, with full knowledge permits assessments throughout the state to be made at substantially less than 50% of fair market value. See, *Kansas City Southern Rly. Co. v. Board of County Comm'rs*, 183 Kan. 675, 331 P. 2d 899.)

Appellant specifies that it was error for the trial court to refuse to give the following requested instruction:

"You are instructed that in satisfying the burden of proof resting upon the plaintiffs, Roy Avery and Lulu Avery, all circumstances and facts must be ample and must appear from the evidence. Moreover, such evidence must not leave the causal connection a matter of conjecture; it must be something more than consistent with plaintiffs' theory as to how the damage occurred. When the proof of causal connection is equally balanced, or the facts are as consistent with one theory as with another theory, plaintiffs have not met the burden of proof the law places upon them, in which case your verdict must be for The City of Lyons, Kansas."

It is argued that this instruction was highly essential to this case where the plaintiffs contended on the theory that gas came from the alley mains. We cannot pass upon this question since appellant has not seen fit to produce all of the instructions given by the trial court, some of which may have had a bearing upon burden of proof and circumstantial evidence. Upon this point the appellant has not made it appear from the record that the trial court erred. (*Beye v. Andres*, 179 Kan. 502, 296 P. 2d 1049.)

Appellant contends that the trial court erred in admitting evidence of future anticipated damages for loss of profits, "going concern" and good will as elements of damage, and further erred in giving Instruction No. 20, the material portion of which reads:

". . . Plaintiffs have asked for damages in addition because it was necessary for them to discontinue all business operations for a period of ten weeks and that the reasonably expected profits for that period of normal operation would be $1,385.36. You are instructed that loss of profits to a business which has been wrongfully interrupted by another is an element of damage for which recovery may be had, but before you can award plaintiff damages for such interruption of business it must appear to your satisfaction

that the business was an established business, that it had been successfully conducted for such a length of time and had such a trade established that the profits thereof are reasonably ascertainable, and in this connection, should you so find, then you should allow plaintiff such damages as you could reasonably ascertain plaintiff might have recovered as net profits had the explosion not occurred and had said business continued to operate during said period of interruption, taking into account the net profits, if any, realized and made from the operation of said business, prior to the explosion, but in no case, exceeding the amount prayed for.

"Plaintiffs have also asked for damages because, they allege, that during the time they were forced to discontinue all business operations, their regular customers formed other trading habits and made business connections with other merchants engaged in lines of business of the same nature as that engaged in by plaintiffs, and as a result, plaintiffs have lost good will and going concern value in the amount of $8,000.00. You are instructed that this, likewise, is an element of damage for which recovery may be had, but it is likewise a matter which plaintiffs must establish to your satisfaction by a preponderance of the evidence. It is not a matter for speculation or conjecture, or the fact that temporarily plaintiffs may have lost customers or business, but plaintiffs must show to your satisfaction that because of the interruption in their business the value of the business as a going concern has been diminished or depreciated to such an extent that plaintiffs have suffered loss as a result thereof. If plaintiffs so satisfy you, then you may then allow damages for this item, not exceeding however, the amount prayed for."

It is argued that this instruction is contrary to G. S. 1949, 12-105, in that such statute permits only evidence of damages during the period of three months prior to the filing of the claim with the city. The statute (12-105, *supra*) provides:

"No action shall be maintained by any person or corporation against any city on account of injury to person or property unless the person or corporation injured shall within three months thereafter and prior to the bringing of the suit file with the city clerk a written statement, giving the time and place of the happening of the accident or injury received and the circumstances relating thereto. Such city shall have thirty days from the time of the filing of such statement to make settlement with the claimant if it so desires."

This statute is simply an enactment requiring that a notice be served upon a city within three months after an injury to person or property as a prerequisite to the right to maintain an action. The statute makes no limitation as to otherwise proper elements of damage for the *specific injury* occasioned. Apparent from the "Statement and Claim for Damages," filed by the appellees with the City of Lyons, is the fact that the notice claimed these damages, and claimed them as *known consequences* of an *injury already sustained.* Once the notice is complied with, it neither limits nor increases damages otherwise recoverable.

Loss of profits from destruction or interruption of an established business may be recovered where the plaintiff makes it reasonably certain by competent proof what the amount of his loss actually was. It must be made to appear the business had been in successful operation for such period of time as to give it permanency and recognition, and that it was earning a profit which may reasonably be ascertainable or approximated. (*States v. Durkin,* 65 Kan. 101, 68 Pac. 1091; *Mensing v. Wright,* 86 Kan. 98, 119 Pac. 374; *Shepherdson v. Storrs,* 114 Kan. 148, 217 Pac. 290; *McCracken v. Stewart,* 170 Kan. 129, 223 P. 2d 963; *Sullivan v. Sproule,* 176 Kan. 274, 269 P. 2d 1015; and *O'Neal v. Bainbridge,* 94 Kan. 518, 146 Pac. 1165.) The fact that damages cannot be calculated with absolute exactness will not render them so uncertain as to preclude an assessment. (*Eastman Kodak Co. v. Southern Photo Material Co.,* 295 Fed. 98; *Roseland v. Phister Mfg. Co.,* 125 F. 2d 417; and see, also, *Shepherdson v. Storrs,* supra.)

Good will is property. It may be sold and it may be damaged. (*The T. & P. Ry. Co. v. Mercer,* 127 Tex. 220, 90 S. W. 2d 557, 106 A. L. R. 1299.) The chief elements of good will are continuity of place and continuity of time. (*Matter of Brown,* 242 N. Y. 1, 150 N. E. 581, 44 A. L. R. 510.) Good will means an established business at a given place with the patronage that attaches to the name and the location. It is the probability that old customers will resort to the old place. (*Mattis v. Lally,* 138 Conn. 51, 82 A. 2d 155, 46 A. L. R. 2d 114.)

In *Hines v. Roberts Bros.,* 117 Kan. 589, 232 Pac. 1050, this court gave definitions of good will defined in Bouvier's Law Dictionary, in Words and Phrases and in Webster's New International Dictionary, Second Edition. The court there said at page 594:

"Good will, as defined by these authorities, necessarily is damaged when the business with which it is connected stands idle. The evidence to show the damages sustained by the plaintiff included loss occasioned by the restaurant being closed. That was part of the damage which the plaintiff by his petition sought to recover in this action. It cannot be successfully contended —it is not contended—that good will is not a proper element of damages in an action of this character."

Appellant argues that the store burned April 25, 1954, the claim statement was filed July 22, 1954, 88 days thereafter, and damages were allowed for 120 days. This is based upon Avery's testimony that it would take 120 days to get the store back in business. Ap-

pellant cites cases tending to support its contention that since *these damages* are measured by *future effects* that may not all happen within three months of the wrongful act, there is no *actionable injury*, thus indicating a restriction under the statute. (Citing: *Beard v. Kansas City*, 96 Kan. 102, 150 Pac. 540; *Jeakins v. City of El Dorado*, 143 Kan. 206, 53 P. 2d 798; and *Steifer v. City of Kansas City*, 175 Kan. 794, 267 P. 2d 474.) Language in these authorities upon which appellant relies must be considered in the light of the facts upon which they were written. When so analyzed, none is applicable to the issue here presented. In both the *Beard* and the *Jeakins* cases the disapproved elements of damage were for injuries incurred more than the requisite statutory time (four and three months, respectively under the applicable statute) *preceding* the filing of claim. The *Steifer* case dealt with a *nuisance*—a continuing injury which caused damage. The decision turned upon the *limitation* in the *statutory claim* itself. The claim disclosed that damages were limited to the date of filing with the city. Thus, it was held plaintiffs could not prove damages to their person or property after that date.

We therefore hold that the trial court did not err in the admission of evidence as to loss of profits and good will as elements of damage and properly instructed on these points, since the appellees in their statutory claim demanded damages that would *inevitably follow the injury that had already been sustained.*

Inasmuch as trial errors specified by the appellant have been determined to have no merit, it follows that the trial court did not err in overruling the motion for a new trial and in entering judgment upon the verdict for appellees.

The judgment of the trial court is affirmed.