968 F.2d 1224
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 EQUIFAX SERVICES, INC., doing business as Equifax Commercial
Specialists, formerly known as White & White
Inspection & Audit Service, Inc.,
Plaintiff-Appellee,
v.
Steven A. HITZ, Defendant-Appellant.
 No. 91-3109.
 United States Court of Appeals, Tenth Circuit.
 July 9, 1992.
 
 Before BALDOCK and BARRETT, Circuit Judges, and PARKER*, District Judge.
 ORDER AND JUDGMENT**
 BARRET, Senior Circuit Judge.
 
 
 1
 Steven A. Hitz (Hitz), appeals from the order and judgment of $605,000 entered in favor of Equifax Services, Inc., d/b/a Equifax Commercial Specialists f/k/a White & White Inspection and Audit Service, Inc. (Equifax)[1] after trial to the district court.
 
 
 2
 Hitz was employed as a branch manager for White & White Inspection and Audit Service, Inc., a Missouri corporation. (White & White). As branch manager, Hitz was involved with White & White's customers in such a manner as to allow him access to the clients and to confidential information about the different client accounts. During this employment, Hitz signed two employment agreements, one in 1982 and one in 1986. The 1986 employment agreement contained the following covenant not to compete clause:
 
 
 3
 9. Covenant Not To Compete.
 
 
 4
 (a) The Branch Manager agrees that for a period of two (2) years following the termination of his employment with White & White for any reason whatsoever, whether such termination is with or without cause, he will not engage, directly or indirectly, in competition with White & White in furnishing Investigations to the Customers on a fee basis in any State(s) in which he as operated as a branch manager within the past two (2) years, either as a principal, agent, partner, officer, director, stockholder, advisor, consultant, employee, contractor, or in any other form, method or capacity. For the same period, the Branch Manager further agrees that he will not in any manner persuade or attempt to persuade any employee or field representative of White & White to discontinue his relationship with White & White or engage in concert with any employee or field representative of White & White in competition with White & White. It is agreed that any breach of this Agreement by the Branch Manager shall entitle White & White, in addition to any other legal remedies available to it, to apply to any court of competent jurisdiction to enjoin any violation of this Agreement.
 
 
 5
 (Appellee's Appendix, Vol. 2, Tab 119, pp. 3-4). The agreement also contained a paragraph which stated that the agreement would be governed by the laws of the State of Kansas. Id. at 4.
 
 
 6
 On February 24, 1988, prior to the merger,[2] Hitz informed White & White that he intended to resign his position, which he did vacate on March 31, 1988. On April 1, 1988, Hitz went to work for a competing company, Golden Coast Survey and Audit Services, Inc. (Golden Coast).
 
 
 7
 On April 28, 1988, White & White, through its attorney, notified Hitz that it believed he was in violation of his employment agreement. Specifically, White & White alleged that Hitz was violating the covenant not to compete clause of the agreement. White & White also notified Hitz that it intended to enforce the restrictive covenant. (Appellant's Appendix, Vol. III, Tab 45).
 
 
 8
 Equifax brought suit in Kansas state court against Hitz on December 19, 1988, for both damages and injunctive relief. Hitz removed the case to the United States District Court for the District of Kansas on diversity grounds. On February 21, 1989, the district court entered a temporary restraining order (TRO) against Hitz. (Appellant's Appendix, Vol. I, Tab 1). The TRO enjoined him from violating the covenants contained in the employment agreement he had with White & White. Thereafter, Hitz moved to dismiss the complaint alleging lack of personal jurisdiction. Alternatively, he sought a change of venue to the United States District Court for the Central District of California. (Appellant's Appendix, Vol. I, Tab 2).
 
 
 9
 On March 8, 1989, the district court entered a preliminary injunction against Hitz, and denied his motion for a change of venue. (Appellant's Appendix, Vol. I, Tab 3). We affirmed the district court's preliminary injunction and determined that the motion for a change of venue was an interlocutory order and not immediately appealable. See, Equifax Services, Inc., v. Hitz, 905 F.2d 1355 (10th Cir.1990).
 
 
 10
 While Hitz's first appeal to our court was pending, Equifax filed an amended complaint against Hitz, which alleged: breach of agreement; interference with prospective business or economic advantage; breach of the fiduciary duty of good faith and fair dealing; unfair competition; and misrepresentation. (Appellant's Appendix, Vol. I, Tab 5).
 
 
 11
 On August 20, 1990, the district court commenced a two day bench trial. At the trial, Equifax alleged that Hitz and his wife formed Golden Coast during March, 1988, prior to his resignation from White & White; that Hitz actively participated in the formation of Golden Coast; that Hitz's wife owned 95% of the shares of stock in Golden Coast[3]; that before and after Hitz's resignation from White & White, he solicited business on behalf of Golden Coast from clients of White & White; and that Hitz contacted other employees of White & White regarding possible employment with Golden Coast.
 
 
 12
 On January 24, 1991, the district court entered judgment in favor of Equifax, awarding Equifax $605,000 in damages. In its detailed judgment, the district court found, inter alia, that: it had personal jurisdiction over Hitz; pursuant to Kansas choice of law principles, Kansas law governed the dispute; the restrictive covenant should be reformed to cover only the Los Angeles branch area, rather than all of California; Hitz had entered an employment agreement with White & White, in which he agreed to the covenant not to compete clause; Hitz had violated the covenant; the transaction between White & White and Equifax was a merger and not a sale; and, Equifax suffered damages as a result of Hitz's breach of the employment agreement. The court determined that the damages suffered by Equifax included lost profits, costs incurred to replace and train employees hired away by Hitz, and the loss of goodwill among many of White & White's former clients. (Appellant's Appendix, Vol. IV, Tab 62). Following the judgment, Hitz filed a motion for a new trial, which was denied by the district court. (Appellant's Appendix, Vol. IV, Tabs 68 and 70).
 
 
 13
 On appeal, in a lengthy listing of issues, Hitz contends that the district court erred in what basically amounts to all of its findings of facts and conclusions of law. Questions of law are reviewed de novo, while factual findings of the district court are reviewed under the clearly erroneous standard. American Council for the Blind of Colorado, Inc. v. Romer, 1992 WL 90490 * 1 (10th Cir., May 5, 1992).
 
 I.
 
 14
 Hitz here argues many of the same legal issues we dealt with in Equifax Servs., Inc. v. Hitz, 905 F.2d 1355 (10th Cir.1990). We there held in favor of Equifax on the issues regarding personal jurisdiction, standing, and choice of law in the preliminary injunctive stage of the lawsuit. We hold in favor of Equifax on the same issues here.
 
 
 15
 a.
 
 
 16
 Regarding the issue of personal jurisdiction, we have held that,
 
 
 17
 " 'A federal court sitting in diversity "may exercise personal jurisdiction over a nonresident defendant only so long as there exist ' "minimum contacts" ' between the defendant and the forum state." "The defendant's contacts with the forum state must be such that maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice." ' " ' "
 
 
 18
 Kennedy v. Freeman, 919 F.2d 126, 128 (10th Cir.1990) (citations omitted). We further held that to establish specific jurisdiction, a party must do some act that represents an effort by him to "purposefully avail [ ] [himself] of the privilege of conducting activities within the forum State." Id. (citations omitted).
 
 
 19
 In Equifax, we held that "the nature of defendant's relationship with his Kansas employer supports the district court's exercise of personal jurisdiction over defendant in Kansas in this dispute arising out of that relationship." Equifax at 1357. Hitz purposefully availed himself of the privilege of conducting activities within Kansas when he agreed to employment with a corporation whose home office and all administrative activities relating to the employment were in Kansas.[4] Furthermore, Hitz agreed to an employment agreement which contained a clause providing that the agreement would be governed by the law of the State of Kansas. (Appellee's Appendix, Vol. 2, Tab 119, p. 4).
 
 
 20
 Hitz argued in Equifax, as he does here, that the district court erred in finding that he was not fraudulently induced to sign the 1986 agreement with White & White. In Equifax, we found nothing in the record to support the claim, nor do we find anything in the present record which would support such a claim. Thus, we hold that the district court properly exercised personal jurisdiction over Hitz.
 
 
 21
 b.
 
 
 22
 The 1986 employment agreement signed by Hitz, contained a paragraph which read as follows:
 
 
 23
 10. Miscellaneous.
 
 
 24
 * * *
 
 
 25
 * * *
 
 
 26
 (f) Inurement and Modification. The duties and obligations of the Branch Manager under this agreement shall inure the benefit of the successors and assigns of White & White....
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 (Appellee's Appendix, Vol. 2, Tab 119, p. 4).
 
 
 30
 We held in Equifax, that, "[i]n the case of a merger, as here, the surviving corporation automatically succeeds to the rights of the merged corporations to enforce employees' covenants not to compete." Equifax at 1361 (citations omitted). Our holding that the surviving corporation automatically succeeds to the rights of the merged corporation and the clause stated in the employment agreement that Hitz signed, clearly indicates that Equifax had standing to enforce the agreement and the covenants contained therein.
 
 
 31
 c.
 
 
 32
 The federal district court for the District of Kansas has held that "when [a] court exercises diversity jurisdiction, it must apply the substantive law of the forum state," Commercial Union Ins. v. John Massman Contracting, 713 F.Supp. 1403, 1404-5 (D.Kan.1989) (citation omitted), and that "in contract actions, Kansas courts follow the general rule that the place where the contract is made controls its interpretation.... [and that] the contract is 'made' where the last act necessary for its formation is performed." Id. at 1405 (citation omitted). We agree. See also, Frasher v. Life Investors Ins. Co., 796 P.2d 1069, 1071 (Kan.App.1990) (when the underlying issue involves construction of a contract, the choice of law rule applied by Kansas is lex loci contractus); State Farm Mut. Auto. Ins. Co. v. Baker, 797 P.2d 168, 171 (Kan.App.1990) (which state's substantive law is applicable to construction of contract issues is determined by where the contract is made).
 
 
 33
 In the instant case, after Hitz had signed the contract, the last act necessary for the formation of the employment agreement between Equifax and Hitz was the signature of the president of Equifax at the home office of the corporation in Kansas. This was the final step in solidifying the employment agreement between Hitz and Equifax. The contract specifically stated that Kansas law would govern the contract.
 
 
 34
 In Equifax, we held that Kansas law would govern the contract as specifically provided in the employment agreement. We also held that under Kansas law, when there is no contractual choice-of-law provision, the Kansas Supreme Court has chosen to adhere to the lex loci contractus rule. Equifax at 1360 (citing St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc., 777 P.2d 1259, 1267-70 (Kan.1989)). Thus, we hold that based upon our review of the facts and our holdings in Equifax, the place of contract is Kansas and Kansas substantive law is applicable.
 
 II.
 
 35
 Hitz contends that the district court erred in concluding that the "customer contacts" covenants in the employment agreement did not seek to prevent ordinary competition and could be enforced against him under Kansas law.
 
 
 36
 In Uarco Inc. v. Eastland, 584 F.Supp. 1259, 1261 (D.Kan.1984), the court determined that a clause not to compete was valid if ancillary to a lawful contract, but that it was subject to reasonableness. The court further found that "only legitimate interests may be protected by such a covenant, and it is unreasonable if its real object is merely to avoid ordinary competition." (citations omitted). See also Eastern Distributing Co., Inc. v. Flynn, 567 P.2d 1371, 1376-1377 (Kan.1977).
 
 
 37
 The Uarco case involved facts similar to those in the instant case. In Uarco, the "plaintiff's business '[was] one in which the employee [was] the sole or primary contact with the customers and in which a close personal relationship with them is fostered, enabling the employee to control such business as a personal asset.' " Uarco at 1262 (citation omitted). In our case the evidence established that a similar relationship existed between Hitz and the clients he dealt with while employed by White & White.
 
 
 38
 The nature of Hitz's employment indicates that the covenant not to compete set forth in the employment agreement served a legitimate purpose in protecting White & White from that which ultimately happened, i.e., Hitz's use of his relationship with the clients to lure them away from White & White to Golden Coast. The covenant was also reasonable once the district court restricted its coverage to the Los Angeles branch area only.
 
 
 39
 Therefore, based upon the restriction placed upon the covenant by the district court, and the evidence presented regarding the nature of Hitz's employment, we hold that the district court did not err in concluding that the covenant did not seek to prevent ordinary competition and could be enforced against Hitz.
 
 III.
 
 40
 Hitz contends that the district court erred as a matter of law in enforcing the successors and assigns clause in the agreement when there was a lack of consideration to support it.
 
 
 41
 In order to be enforceable, a contract must be supported by consideration. Puritan-Bennett Corp. v. Richter, 657 P.2d 589, 591 (Kan.App.1983). The record reflects that Hitz's compensation increased by $10,000 from approximately $130,000 in 1986 to approximately $140,000 in 1987. (Appellant's Appendix, Vol. II, Tab 22, p. 100). The employment agreement was signed December 24, 1986. (Appellee's Appendix, Vol. 2, Tab 119). Therefore, we hold that the district court correctly determined that Hitz received adequate consideration to support the successors and assigns clause in the employment agreement.
 
 IV.
 
 42
 Hitz contends that the district court erred in awarding damages to Equifax after granting it injunctive relief.
 
 
 43
 The employment agreement signed by Hitz states in pertinent part, that "[i]t is agreed that any breach of this Agreement by the Branch Manager shall entitle White & White, in addition to any other legal remedies available to it, to apply to any court of competent jurisdiction to enjoin any violation of this Agreement." (Appellee's Appendix, Vol. 2, Tab 119, p. 4). The agreement further stated that in the event of a breach, the duration of the covenant not to compete would be extended beyond the stated two year period for a time period equal to the duration of the breach. Id.
 
 
 44
 The parties have not addressed the standard of review we should pursue regarding the district court's authority to award both damages and injunctive relief. In E.E.O.C. v. Ackerman, Hood & McQueen, Inc., 956 F.2d 944, 946-47 (10th Cir.1992), we held:
 
 
 45
 Our review of the district court's factual findings is limited to determining whether they are clearly erroneous. See Fed.R.Civ.P. 52(a); Beck v. Quiktrip Corp., 708 F.2d 532, 535 (10th Cir.1983). In contrast, we review legal issues de novo. Northern Natural Gas Co. v. Grounds, 931 F.2d 678, 681 (10th Cir.1991); Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 152 (1st Cir.1990).
 
 
 46
 Hitz argues that the award of injunctive relief and damages is duplicative. We disagree. The district court did not award both injunctive relief and damages. The court refused to extend the previously imposed injunctive relief, in accordance with the employment agreement, because it did award damages. (Appellant's Appendix, Vol. IV, Tab 62, p. 14-15). The district court ruled that the damages awarded to Equifax were "for the period during which defendant was in breach of contract, ..." No error was committed. The purpose of injunctive relief is to prevent future violations. United States v. W.T. Grant Co., 345 U.S. 629 (1953).
 
 
 47
 Hitz argues in a footnote to his brief that, "[i]f Equifax can recover damages, it is not entitled to the damages it sustained prior to trial during a period of time the covenants were overly broad and not reasonably restricted geographically." Again, we disagree. There is nothing in the record indicating that any objection was made by Hitz in the district court to the damages based upon the argument that the covenant was overly broad and not geographically reasonably restricted. Absent such objection by Hitz, we defer to the district court's judgment in it's calculation of the damages based upon the evidence presented.
 
 
 48
 This court will generally not address issues which were not raised, considered and ruled upon by the district court. Farmers Ins. Co., Inc. v. Hubbard, 869 F.2d 565, 570 (10th Cir.1989); Burnette v. Dresser Industries, Inc., 849 F.2d 1277 (10th Cir.1988). In Farmers we observed that the narrow exceptions to the general rule relate to issues of jurisdiction in the "case or controversy" limitation of Article 3, Section 2 of the United States Constitution and questions of sovereign immunity. 869 F.2d at 570. Those exceptions do not apply here.
 
 V.
 
 49
 In a detailed Memorandum And Order, the district court set forth its findings of facts and conclusions of law. (See attached Memorandum and Order). The court found, inter alia, that: Hitz had breached his employment agreement by hiring White & White employees away from them; such actions directly resulted in damages to Equifax; and the damages amounted to lost profits, the cost of retraining and relocating employees, and loss of reputation and goodwill. We hold that the factual findings of the district court are substantiated by the record, and are not clearly erroneous.
 
 
 50
 Based upon a careful review of the record, the arguments and legal authority, we hold that the district court did not err in finding that Hitz signed an employment agreement with White & White which contained a binding covenant not to compete clause, that Hitz breached the agreement, and that Equifax suffered damages because of the breach.
 
 
 51
 We affirm for substantially the reasons set forth in the district court's Memorandum And Order of January 24, 1991, a copy of which is attached hereto and by reference made a part hereof.
 
 
 52
 AFFIRMED.
 
 EXHIBIT 1
 
 53
 IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS
 
 
 54
 EQUIFAX SERVICES, INC., d/b/a Equifax Commericial
 
 
 55
 Specialists, f/k/a White & White Inspection and
 
 
 56
 Audit Service, Inc., Plaintiff,
 
 
 57
 v.
 
 
 58
 STEVEN A. HITZ, Defendant.
 
 CIVIL ACTION Case No. 89-2047-S
 Jan. 24, 1991
 MEMORANDUM AND ORDER
 
 59
 This matter was tried to the court on August 20 and 21, 1990. This is an action for injunctive relief and damages.
 
 
 60
 Plaintiff Equifax Services, Inc., d/b/a Equifax Commercial Specialists, f/k/a White & White Inspection and Audit Services, Inc. (hereafter "Equifax" or "plaintiff") brings this action alleging numerous claims against defendant Steven A. Hitz (hereafter "Hitz" or "defendant"). All of plaintiff's claims center around defendant's alleged wrongful conduct whereby he ignored a covenant not to compete which he had entered into with his former employer, White & White. In addition to injunctive relief and damages, plaintiff petitions the court for the award of attorneys' fees. Also before the court is plaintiff's motion for a citation of contempt for defendant's alleged violation of this court's preliminary injunction entered on March 8, 1989.
 
 Findings of Fact
 
 61
 Based on the evidence before the court, the court makes the following findings of fact.
 
 
 62
 1. Defendant Steven Hitz began working for White & White Inspection and Audit Service, Inc. in 1980. White & White was engaged in the business of furnishing insurance inspections, premium audits, surveys, investigations and related work for insurance companies on a fee basis. Defendant was branch manager of White & White's southern California branch and serviced clients mainly in the Los Angeles area.
 
 
 63
 2. The defendant executed an employment contract with White & White in 1982. Later, a new employment contract was entered into in 1986. Each contract contained a covenant not to compete clause. The December 24, 1986, contract stated:
 
 
 64
 The Branch Manager agrees that for a period of two (2) years following the termination of his employment with White & White for any reason whatsoever, whether such termination is with or without cause, he will not engage, directly or indirectly, in competition with White & White in furnishing Investigations to the Customers on a fee basis in any state(s) in which he has operated as a branch manager within the past two (2) years, either as a principal, agent, partner, officer, director, stockholder, advisor, consultant, employee, contractor, or in other form, method or capacity for the same period, the Branch Manager further agrees that he will not in any manner persuade or attempt to persuade any employee or field representative of White & White to discontinue his relationship with White & White or engage in competition with White & White. It is agreed that any breach of this Agreement by the Branch Manager shall entitle White & White, in addition to any other legal remedies available to it, to apply to any court of competent jurisdiction to enjoin any violation of this Agreement.
 
 
 65
 Plaintiff's exhibit 2, paragraph 9(a).
 
 
 66
 3. The contract contained a clause providing that the rights and obligations created by the contract would inure to the benefit of White & White's successors. The contract stated:
 
 
 67
 The duties and obligations of the Branch Manager under this agreement shall inure to the benefit of the successors and assigns of White & White.
 
 
 68
 Plaintiff's exhibit 2, paragraph 10(f).
 
 
 69
 4. Also, the contract provided that the employment agreement would be construed and governed in accordance with the laws of Kansas. Plaintiff's exhibit 2, paragraph 10(d).
 
 
 70
 5. Defendant was not fraudulently induced to sign his 1986 contract of employment with White & White.
 
 
 71
 6. In early 1988, White & White entered into a corporate merger with Equifax Services, Inc. White & White Inspection and Audit Service, Inc. merged into White & White Acquisitions, which later merged into Equifax. Plaintiff's exhibit 24. Equifax Commercial Specialists, a division of Equifax Services, Inc., primarily handles the business developed and previously operated by White & White. Also, Equifax Commercial Specialists maintains its home office in Overland Park, Kansas.
 
 
 72
 7. Plaintiff's December 24, 1986, contract of employment with White & White Inspection and Audit Service, Inc. (hereafter "White & White") contained a clause which states, "[t]he Agreement shall become effective when signed for White & White at its Home Office [located in Overland Park, Kansas]." Plaintiff's exhibit 2, paragraph 10(g).
 
 
 73
 8. At the time this lawsuit was commenced, defendant Hitz was the President of Golden Coast Insurance Services, Inc. (hereafter "Golden Coast"). Golden Coast engages in the same type of business as defendant's former employer. Defendant's wife, Ginger Hitz, currently owns 95% of its stock. Defendant is currently employed by Golden Coast as a consultant.
 
 
 74
 9. Golden Coast actively solicits business from many former clients of White & White's California branch. Many of White & White's former clients began and have continued to utilize Golden Coast instead of Equifax. Other former clients of White & White have continued to utilize Equifax while also sending work to Golden Coast.
 
 
 75
 10. Based upon evidence presented at trial, the insurance investigative industry is a highly competitive industry, with numerous companies offering such services to the insurance industry. Indeed, many insurance companies employ several investigative companies at the same time.
 
 
 76
 11. Defendant Hitz was informed by letter, dated April 28, 1988, that the covenant not to compete contained in Hitz's contract of employment, would be enforced against him. On July 26, 1988, defendant signed an agreement with plaintiff in which he ratified his 1986 employment agreement containing the covenant not to compete.
 
 
 77
 12. On December 19, 1988, plaintiff filed a petition in state court. This action was later removed to this court.
 
 
 78
 13. On March 8, 1989, this court entered a preliminary injunction restraining defendant from competing directly or indirectly with plaintiff in furnishing investigations, on a fee basis in any county in which Hitz has operated as a branch manager within the last two years. Defendant was further enjoined from directly or indirectly attempting in any manner to persuade any employee or field representative of plaintiff to discontinue his relationship with plaintiff.
 
 
 79
 14. Defendant Hitz was further enjoined from directly or indirectly engaging in concert with any employee or field representative in competition with plaintiff. Finally, plaintiff was enjoined from directly or indirectly using, disseminating, disclosing, lecturing upon or publishing articles concerning the confidential information disclosed to defendant as a consequence of his employment with plaintiff.
 
 
 80
 15. Defendant appealed this court's March 8, 1989, order which enjoined defendant from competing with Equifax. This court's decision was affirmed by the Tenth Circuit Court of Appeals on June 4, 1990. Equifax Serv., Inc. v. Hitz, 905 F.2d 1355, 1362 (10th Cir.1990).
 
 
 81
 16. Golden Coast was formed during March of 1988, defendant's last month of employment with White & White. On March 24, 1988, Hitz solicited business on behalf of Golden Coast from plaintiff's former customer, Farmers Insurance Group, through Joan Dinardo. Specifically, Hitz mailed a letter of solicitation to Ms. Dinardo. Plaintiff's Exhibit 7. Enclosed in this letter was a Golden Coast business card with Hitz's name. Defendant followed up this correspondence with a letter dated March 30, 1988, in which he enclosed a brochure detailing the organization, the "players," and the type of services which could be provided by Golden Coast. Hitz was portrayed as one of the key "players." Plaintiff's exhibit 8.
 
 
 82
 17. Other former clients of plaintiff which Hitz or Golden Coast has solicited from the Los Angeles area or Simi Valley area include more than 40 insurance companies. Plaintiff's exhibits 3 and 6.
 
 
 83
 18. Additionally, defendant Hitz, as President of Golden Coast, sent letters of solicitation directly to: American Hardware Insurance Group, Fireman's Fund, C & F Surplus, and Crudader Insurance Company. Plaintiff's exhibits 11, 14, 15 and 16.
 
 
 84
 19. After Hitz notified plaintiff of his resignation in March of 1988, Hitz sent a memorandum to all "field staff." In this memorandum, Hitz invited the field staff to inquire why he had decided to leave. Also, Hitz suggested that "perhaps [his and members' of the field staff] paths may cross again." Plaintiff's exhibit 4.
 
 
 85
 20. Subsequent to the formation of Golden Coast, Hitz and Golden Coast employed approximately 17 former employees and field agents of plaintiff. Plaintiff's exhibits 40-53. One of these employees performed field audits for Golden Coast while still employed with plaintiff. Deposition of Jon Kovach, at 12, 21-27. Defendant even suggested to one untrained job applicant that he should get trained by Equifax and then apply for a job with Golden Coast at a later date. Deposition of Bruce Moffit, at 7-8.
 
 
 86
 21. Golden Coast requires its employees and management personnel to sign employment contracts which contain covenants not to compete. Deposition of Ray Rasori, at 66.
 
 
 87
 22. The agreement form which Golden Coast used to hire field agents was closely modeled after the agreement form utilized by plaintiff.
 
 
 88
 23. Defendant Hitz breached his contract of employment with plaintiff, by directly and indirectly competing with plaintiff in furnishing investigations to customers of plaintiff in southern California within two years after the termination of his employment.
 
 
 89
 24. Defendant further breached his contract of employment with plaintiff by persuading former employees and field agents of plaintiff to discontinue their relationship with Equifax. Defendant breached his contract of employment by engaging in concert with former employees and field agents of plaintiff in competition with plaintiff.
 
 
 90
 25. Plaintiff has suffered damages as a result of defendant Hitz's breach of contract. The damages suffered include lost profits and costs incurred by plaintiff to replace and train employees who were hired by Golden Coast. Additionally, plaintiff's reputation has been damaged and plaintiff has experienced a concomitant loss of goodwill among many of White & White's former clients. This loss of goodwill is primarily the result of defendant's breach and the resulting disruption of plaintiff's ability to provide quality service to its clients.
 
 
 91
 26. Based upon the evidence before the court, identifiable loss profits may be calculated by the amount of net profit which Golden Coast has received from customers who formerly dealt with plaintiff f/k/a White & White. The court finds this amount to be $300,000.00. Plaintiff's exhibit 28.
 
 
 92
 27. Based upon the evidence before the court, the total amount of costs incurred in training and relocating employees as a result of defendant's enticing away plaintiff's employees is $55,000.00.[1] Plaintiff's exhibits 30-32.
 
 
 93
 28. Based upon the evidence before the court, plaintiff has suffered $250,000.00 in the loss of reputation and goodwill among its customers.[2]
 
 
 94
 To the extent that any conclusions of law contain findings of fact, they are incorporated by reference herein as findings of fact.
 
 Conclusions of Law
 
 95
 To the extent that any findings of fact are deemed to be conclusions of law, they are incorporated by reference herein as conclusions of law.
 
 
 96
 1. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1441(a) and 1332.
 
 
 97
 2. Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(a).
 
 
 98
 3. This court has personal jurisdiction over the defendant. The court hereby adopts and incorporates by reference its previous findings of facts and conclusions of law contained in its Memorandum and Order filed on March 8, 1989, as they relate to personal jurisdiction over the defendant. Equifax Serv., Inc. v. Hitz, No. 89-2047-S (D.Kan. filed Mar. 8, 1989) (1989 WL 3595), aff'd., 905 F.2d 1355, 1360 (10th Cir.1990).
 
 
 99
 4. Kansas choice of law principles control whether Kansas or California law governs the substantive issues in this case. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Black v. Cabot Petroleum Corp., 877 F.2d 822, 823 (10th Cir.1989).
 
 
 100
 5. Because plaintiff is seeking to enforce a covenant not to compete, this action may properly be characterized as a contract action. Accordingly, in contract actions, "Kansas applies the rule of lex loci contractus--the law of the state in which the contract is made." Dow Chemical Corp. v. Weevil-cide Co., Inc., 630 F.Supp. 125, 127 (D.Kan.1986) (citing First Nat'l. Bank of Beaver, Oklahoma v. Hough, 643 F.2d 705, 706 (10th Cir.1981) (Kansas courts hold that "a contract is considered 'made' when and where the last act necessary for its formation is done.").
 
 
 101
 6. Pursuant to the very terms of the disputed contract, the place of the making is Kansas. The relevant contractual clause provides:
 
 
 102
 The Agreement shall become effective when signed for White & White at its Home Office [located in Overland Park, Kansas].
 
 
 103
 Plaintiff's exhibit 2, paragraph 10(g). Thus, pursuant to Kansas choice of law principles, Kansas law governs disputes concerning defendant's contract of employment. Moreover, the parties specifically agreed that Kansas law would govern issues involving defendant's contract of employment. Plaintiff's exhibit 2, paragraph 10(d).
 
 
 104
 7. Although Kansas has not specifically addressed the validity of choice of law clauses, this court believes, as does the Tenth Circuit Court of Appeals, that such a clause would be upheld by Kansas courts. See Equifax Serv., Inc. v. Hitz, 905 F.2d at 1360.
 
 
 105
 8. The transaction whereby White & White was combined with Equifax Services, Inc. was, under Missouri law, a merger and not a sale. Plaintiff's exhibit 24, at 31.[3] There were no material changes in the contractual obligations and duties of the branch managers as a result of the merger. Thus, Equifax, as the surviving corporation, succeeds to the rights of White & White to enforce Hitz's covenant not to compete. See Alexander & Alexander, Inc. v. Koelz, 722 S.W.2d 311, 313 (Mo.Ct.App.1986). Further, the parties have agreed that the duties and obligations of the defendant shall inure to the benefit of the successors and assigns of White & White. Plaintiff's exhibit 2, paragraph 10(f). Accordingly, Equifax has standing to enforce the covenant not to compete.
 
 
 106
 9. Under Kansas law, the noncompetition and nonsolicitation clause contained in the contract, while overly broad geographically (covering all of California), may be reformed and thereby enforced "to an extent necessary to carry out the protective intent of the agreement...." Foltz v. Struxness, 168 Kan. 714, 215 P.2d 133, 138 (1950). Further, the parties have agreed by contract that the restrictive covenant may be reformed "as is reasonably necessary to protect the interests of White & White." Plaintiff's exhibit 2, paragraph 10(l). The court will reform the restrictive covenant to cover the Los Angeles branch area. Specifically, the restrictive covenant shall cover all counties included in the Los Angeles branch area of White & White during the period defendant was employed as White & White's Los Angeles Branch Manager.
 
 
 107
 10. The court further finds that the interests which Equifax seeks to protect by enforcement of the covenant not to compete are legitimate business interests which, under Kansas law, may be protected through the enforcement of a covenant not to compete. See Eastern Distributing Co., Inc. v. Flynn, 222 Kan. 666, 567 P.2d 1371, 1376-77 (1977) (" 'customer contacts' is a legitimate interest to be protected by an employee." The most important factor is "the nature of the functions performed by the employee."). The insurance investigation business is based upon personal contacts and knowledge of the special needs of customers. As testimony by deposition revealed, when customers have complaints with work which has been done by field agents, their complaints are directed to the branch manager who in turn attempts to redress their complaints. Further, as stated in defendant's contract of employment, defendant's primary function as branch manager was to "develop valuable business relationships with the Customers on behalf of White & White." Plaintiff's exhibit 2, paragraph 5. Thus, customer contacts were central to defendant's employment with White & White, and defendant would be closely identified with the service being sold. This conclusion is further supported by evidence that some clients of White & White decided to give Golden Coast investigative work because of their familiarity with the quality of defendant Hitz's work at White & White.
 
 
 108
 11. Defendant has breached the covenant not to compete by engaging in competition with Equifax in furnishing investigations to customers of White & White in the Los Angeles branch area of southern California. Further, defendant has breached his contract of employment by persuading employees of White & White to terminate their employment with Equifax.
 
 
 109
 12. Under Kansas contract law, plaintiff may recover damages which may "fairly be considered as arising, in the usual course of things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach." Hochman v. American Family Ins. Co., 9 Kan.App.2d 151, 673 P.2d 1200, 1203 (1984). The court finds the damages which plaintiff alleges (i.e., loss profits, costs incurred in replacing employees who were enticed away from Equifax, and damages to plaintiff's reputation and goodwill) to be within the contemplation of the parties at the time of contracting. Indeed, avoidance of these losses were the actual purposes of entering into a covenant not to compete. Thus, these damages are recoverable under plaintiff's breach of contract claim[4].
 
 
 110
 13. Further, under Kansas law, damages resulting from harm to a business' goodwill are recoverable. See Avery v. City of Lyons, 183 Kan. 611, 621, 331 P.2d 906, 914 (1958).
 
 
 111
 12. The elements of goodwill are: continuity of place and continuity of time. Id. "Good will means an established business at a given place with the patronage that attaches to the name and the location. It is the probability that old customers will resort to the [former business]." Id.
 
 
 112
 13. In order to recover, plaintiff must make it "reasonably certain by competent proof what the amount of his loss actually was." Id., 331 P.2d at 913. However, the "fact that damages cannot be calculated with absolute exactness will not render them so uncertain as to preclude an assessment." Id., 331 P.2d at 914. The court finds plaintiff's assessment that it has suffered $250,000.00 damages to its goodwill to be a fair assessment.[5]
 
 
 113
 12. The court finds that pursuant to the terms of the parties' contract, the two year restriction against competition imposed by contract is to be extended in the event of a breach, for a period equal to the duration of the breach. Plaintiff's exhibit 2, paragraph 9(b). However, because plaintiff is recovering damages for the period during which defendant was in breach of contract, the court will decline to exercise its equitable powers to extend the injunction for a period equal to the breach.
 
 
 114
 13. The court will not grant plaintiff's request for continuing injunctive relief as the two year restriction contained in the covenant not to compete has run.
 
 
 115
 14. Because this is a diversity case, whether to award attorneys' fees to the prevailing party is a matter of Kansas law. Alyeska Pipe Line Serv. Co. v. Wilderness Soc'y., 421 U.S. 240, 259 n. 31 (1975). Under Kansas law, the awarding of attorneys' fees is "not allowed unless authorized by statute or agreement of the parties." Schuh v. Educational Reading Serv. of Kansas, Inc., 6 Kan.App.2d 100, 101, 626 P.2d 1219, 1220 (1981). No agreement has been entered into regarding attorneys' fees, nor does plaintiff cite any statutory authority pursuant to which it could recover attorneys' fees. Thus, this court will not award attorneys' fees to plaintiff.
 
 Citation of Contempt
 
 116
 Plaintiff has moved the court for a citation of contempt. Plaintiff alleges that defendant has been violating this court's preliminary injunction granted on March 8, 1989. Specifically, plaintiff contends that defendant has been indirectly competing with plaintiff in the area covered by the preliminary injunction. Plaintiff argues that while the defendant has resigned as the President of Golden Coast, he has continued to assist Golden Coast in competing with Equifax in the Los Angeles area. Additionally, plaintiff asserts that defendant has continued to induce employees of Equifax to come to work for Golden Coast.
 
 
 117
 In a civil contempt case, the party seeking a citation of contempt bears a heavy burden. Civil contempt must be proven by clear and convincing evidence. Heinold Hog Mkt., Inc. v. McCoy, 700 F.2d 611, 614-15 (10th Cir.1983) (citations omitted). The court finds that plaintiff has failed to present clear and convincing evidence that defendant is in violation of this court's preliminary injunction. Although defendant continues to maintain an office in the Los Angeles area, he is no longer managing the Los Angeles branch of Golden Coast. Instead, he is involved in providing services in the Seattle and San Francisco areas which are beyond the geographic area in which defendant is prohibited from working. Moreover, while two additional employees of Equifax have become employed by Golden Coast, these employees are not working in the restricted area. Further, the court is not convinced that defendant enticed these two employees from Equifax's employment. Accordingly, the court will deny plaintiff's motion for a citation of contempt.
 
 
 118
 IT IS BY THE COURT THEREFORE ORDERED that judgment is entered in favor of the plaintiff and against defendant in the amount of $605,000.00.
 
 
 119
 IT IS FURTHER ORDERED that plaintiff's motion for injunctive relief denied.
 
 
 120
 IT IS FURTHER ORDERED that plaintiff's motion for a citation of contempt is denied.
 
 DALE E. SAFFELS
 United States District Judge
 
 
 *
 The Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation
 
 
 **
 This Order and Judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 In early 1988, Equifax merged with White & White. While the parties dispute whether Equifax purchased White & White or whether the two merged, the district court determined that it was a corporate merger. See Equifax Services, Inc. v. Hitz, 1991 WL 17651, at * 2 (Appellant's Appendix Tab 62, p. 3)
 
 
 [2]
 The date of the merger is disputed. Hitz states that the "purchase of White & White was consummated" on April 27, 1988 (Appellant's Brief p. 1), and Equifax states that the merger occurred on February 29, 1988. (Appellee's Brief p. 11). The Agreement and Plan of Merger is dated February 29, 1988 (See, Appellee's Appendix Tab 133)
 
 
 [3]
 Equifax contended that prior to the formation of Golden Coast, Hitz's wife had no experience or training in the survey and audit business
 
 
 [4]
 Although Hitz's physical presence in Kansas was not significant, and he worked solely in southern California,
 ... as a branch manager in charge of White & White offices there, his only direct supervision came from White & White employees in Kansas. [Hitz] had regular contact with White & White employees in Kansas, both by telephone, mail, and through electronic data communications. [Hitz's] customers were invoiced from and made payment directly to White & White in Kansas. [Hitz] and his personnel were paid directly by White & White from Kansas, and that company's Kansas office reimbursed expenses for [Hitz's] offices and provided those offices with necessary materials and supplies. [Hitz] also negotiated the terms of his employment contract directly with White & White's president, a contract which paid him $120,000 to $140,000 per year over his last two years of employment.
 Equifax at 1358.
 
 
 [1]
 The court will not award plaintiff the costs of replacing defendant Hitz. The costs incurred in replacing defendant Hitz were not the result of his breach of contract; these costs were the result of his resignation
 
 
 [2]
 Although the court is able to reasonably calculate the amount of loss profits plaintiff has incurred due to former clients giving their business to Golden Coast, the amount of lost profits suffered as a result of present and former customers taking their business to competitors, other than Golden Coast, must be estimated
 
 
 [3]
 The court rejects defendant's argument that because the transaction is treated as a sale for federal taxation purposes, the transaction was not a merger. For purposes of determining the characterization of the transaction, the merger agreement and Missouri law is controlling. The transaction was certified by Missouri law as a merger. Plaintiff's exhibit 24, at 31. Further, in this court's review of the merger agreement, it finds no agreement to be bound by the federal tax code in nontax matters, nor does the defendant point out any such provision in the merger agreement. The court notes that a different result was reached in Equifax Serv., Inc. v. Chlystek, No. 89-3068-0 (D.Kan. filed April 3, 1989) (1989 WL 45345). The court further notes that in Chlystek, the court concluded that the transaction was a sale after a hearing for a preliminary injunction. Thus, the findings of fact made at that hearing were not conclusive findings of fact
 
 
 [4]
 Although defendant's conduct also satisfies the elements for tortious interference with contract, the court finds that the wrongful conduct of defendant which would amount to tortious interference is also the same conduct which constitutes a breach of contract claim. Accordingly, plaintiff's claim for damages are satisfied by one recovery under its breach of contract claim
 
 
 [5]
 The court notes that while plaintiff is recovering for lost profits from former clients of White & White who have employed Golden Coast, some former clients of White & White have taken their business to other competing companies so that damages suffered by plaintiff as a result of defendant's wrongful behavior are not simply those net profits which Golden Coast received from former clients of White & White. Because defendant's breach caused plaintiff to lose numerous employees, plaintiff was unable to satisfactorily perform work for all of its clients until plaintiff had successfully replaced the employees who went to work for Golden Coast. Thus, plaintiff lost many customers to competitors other than Golden Coast